Filed: 1/22/2019 12:53 PM
Clerk
Lake County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE CIRCUIT COURT |
| | ) | |
| LAKE COUNTY | ) | TO THE 2019 TERM |

| | |
|---|---|
| ATIQ REHMAN | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) Cause No. 45C01-1901-PL-_____ |
| | ) |
| FRANCISCAN ALLIANCE, INC. | ) |
|     Defendant. | ) |

## COMPLAINT

Comes Now, Plaintiff Dr. Atiq Rehman ("Rehman") by and through counsel, Kyle Dietrich, and for his Complaint against Franciscan Alliance, Inc., alleges:

## FACTS

1.    Plaintiff, Dr. Atiq Rehman, is now and at all relevant times to this complaint a resident of Cherry Hill, Camden County, New Jersey.

2.    Defendant, Franciscan Alliance, Inc. is a nonprofit corporation incorporated under the laws of the State of Indiana having its principal place of business in Mishawaka, Indiana.

3.    Rehman is a licensed Cardiovascular Surgeon who entered into an employment contract ("Contract") with Franciscan Alliance, Inc. ("Franciscan"), on September 26, 2018. A true and accurate copy is attached as Exhibit A and is made part of this complaint.

4.    Pursuant to the terms of Section 9.5 of the Contract the venue for litigation arising out of the Contract is Lake County, Indiana.

5.    In early July 2018 Rehman began employment negotiations with Franciscan.

6.    In August 2018, he signed a letter of intent with Franciscan.

7.    At the time he began negotiations Rehman was employed at Our Lady of Lourdes Medical Center, Camden, NJ.

**Exhibit A**

8.    In reliance on this letter of intent Rehman gave an exit notice to Our Lady of Lourdes and did not renew his contract with them.

9.    On September 26, 2018, Rehman signed the Contract accepting employment with Franciscan.

10.    The term of employment was for forty-two (42) months with employment to commence January 6, 2019.    Under the Contract Rehman's guaranteed annual base compensation is $1,098,000.

11.    On or about November 9, 2018, during a conference call with Mr. Gene Diamond, Senior Vice President and Chief Operating Officer-Franciscan Alliance; Barbara Anderson, Senior Vice President- Franciscan Alliance Inc.; and Kevin Roesch, Director- Franciscan Alliance, Rehman was informed by Mr. Diamond that Franciscan planned to "withdraw" the Contract.

12.    When Rehman asked for a reason for the withdrawal, he was told by Mr. Diamond that he "did not fit our Franciscan Alliance Inc. culture" or words to that effect.

13.    On November 12, 2018, Mr. Diamond sent a letter via email to Rehman documenting the decision to withdraw the Contract.    In the letter Mr. Diamond alleges that the agreement during the call was that "it would be in our [Franciscan and Rehman] mutual better [sic] interest to not move forward with working here."

14.    On November 16, 2018, Rehman sent an email to Franciscan objecting to the characterization that the decision to terminate his contract was a mutual agreement.

15.    On December 31, 2018, Rehman completed his term of employment with Our Lady of Lourdes.

16.    Franciscan had no valid basis for withdrawing the Contract.

**Exhibit A**

17.     Section 9.9 of the Contract allows a prevailing party in litigation to recover reasonable attorney's fees incurred in litigation to enforce the agreement.

## BREACH OF CONTRACT

18.     Rehman incorporates rhetorical paragraphs 1-17 as if fully restated herein.

19.     On or about September 26, 2018 Rehman entered into an agreement in writing with Franciscan.

20.     All conditions precedent have been performed by Rehman or have occurred.

21.     Franciscan has failed and neglected to perform the agreement in that they repudiated the contract without cause or authority.

WHEREFORE, Plaintiff Atiq Rehman prays for judgment against Defendant Franciscan Alliance, Inc., in the form of monetary relief in an amount and character to be proven at trial; recovery of the costs of this action and reasonable attorney's fees; and such other and further relief as may be proper.

Respectfully submitted,

/s/ Kyle Dietrich
Kyle Dietrich
Attorney # 33920-79
REILING TEDER & SCHRIER, LLC
250 Main Street, Suite 601
P.O. Box 280
Lafayette, IN   47902
Phone: (765) 423-5333
Fax: (765) 423-4564
E-mail: kd@rtslawfirm.com

**Exhibit A**

## PHYSICIAN EMPLOYMENT AGREEMENT

This PHYSICIAN EMPLOYMENT AGREEMENT ("Agreement"), is dated as of September 26, 2018 by and between FRANCISCAN PHYSICIAN NETWORK ("FPN"), a division of Franciscan Alliance, Inc. an Indiana nonprofit corporation ("Franciscan Alliance"), and ATIQ REHMAN, M.D. ("Physician").

### RECITALS

**A.**    Franciscan Alliance is an organization exempt from federal income taxation under Section 501(c) (3) of the Internal Revenue Code of 1986, as amended, and is organized and operates exclusively for charitable purposes, including the provision of health care services through hospitals and healthcare facilities which are owned or leased and operated by Franciscan Alliance or its affiliates, including Franciscan Health Crown Point, Franciscan Health Hammond, Franciscan Health Dyer, Franciscan Health Munster and Franciscan Health Michigan City (collectively the "Hospital").    FPN is an operating division of Franciscan Alliance and was created by Franciscan Alliance to further its mission through the employment of physicians, other professionals, and staff to offer medical care to the communities it serves.

**B.**    FPN desires to employ Physician, and the Physician desires to be employed by FPN, upon the terms and conditions hereinafter set forth.

**NOW, THEREFORE,** in consideration of the foregoing, of the mutual covenants and agreements herein contained and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending legally to be bound, hereby agree as follows:

1.    **Employment Matters**.

    **1.1.**    **Conditions Precedent to Initial Employment**.    The initial employment of Physician by FPN and the commencement date of the Term of Physician's initial employment are subject to the prior satisfaction or waiver by FPN of the following conditions precedent:

**1.1.1**    FPN shall have completed such due diligence reviews and background checks of Physician and his practice as FPN deems advisable and the results of such reviews and background checks shall be satisfactory to FPN in its sole discretion.    Physician hereby consents to such reviews and background checks.    Such reviews may include, but are not limited to, clinical quality reviews and coding reviews; and such background checks may include, but are not limited to, investigations into whether: Physician has been suspended or excluded from participation in the Medicare or Medicaid Programs; Physician's license to practice medicine in any jurisdiction has been suspended, revoked, or otherwise restricted; Physician has been the subject of any complaint or report concerning Physician's competence or conduct to any state medical or professional licensing agency; Physician's privileges at any hospital, health care facility, or under any health care plan have been denied, suspended, restricted, or terminated; Physician's controlled substance registration certificate issued by the Drug Enforcement

1

ATIQ REHMAN, M.D.



Administration has been suspended, revoked, or not renewed; Physician has ever been charged with the commission of a crime, other than minor traffic offenses; and Physician has engaged, or allegedly has been in engaged, in any conduct which, in FPN's sole discretion, FPN believes may reflect poorly on the Physician or FPN.

**1.1.2.** If requested by FPN, Physician shall submit to drug and/or alcohol screening tests, and the results of such test shall be satisfactory to FPN.

**1.1.3** If requested by FPN, Physician shall produce evidence, reasonably satisfactory to FPN, that as of the commencement date of the Term, Physician either had professional medical liability insurance on an occurrence basis or has in place an extended reporting endorsement (tail coverage), in either case covering the Physician for all professional medical liability claims arising from the practice of medicine, which arise from occurrences prior to the Term.

**1.1.4** Physician consents to FPN obtaining evidence of Physician's clinical quality, patient satisfaction, and patient care in general. FPN may request such data or evidence as found in payer reports, governmental reporting practice based data, hospital based data, or any other reliable data source. Physician agrees to cooperate with FPN in FPN's efforts to obtain such data or evidence and further agrees to obtain such data and evidence and provide it to FPN if FPN is unable to directly obtain it.

**1.2** **Employment.**

**1.2.1** **Engagement and Position Description**. Subject to Section 1.1, FPN hereby employs Physician, and Physician accepts employment by FPN, on a full-time basis, to provide the professional medical and administrative services, as set forth on Exhibit A attached hereto and incorporated herein, and such other services as FPN and Physician may, from time to time, mutually agree (collectively, "Services") within the scope of his or her specialty in accordance with the terms of this Agreement and the Position Description included on Exhibit A. Physician accepts this employment according to the terms of this Agreement. Except as may be expressly provided to the contrary herein, Physician shall provide Services for FPN on a full-time and exclusive basis, devoting all of his or her professional efforts. Physician shall not engage in the practice of medicine other than on behalf of FPN, except as may be expressly provided to the contrary herein or with the prior written consent of FPN.

**1.2.2** **Practice Initiatives**. Physician shall also comply with all physician practice initiatives implemented by FPN. Such initiatives may address, but are not limited to, matters such as quality of care, patient satisfaction, employee satisfaction and expense management.

**1.2.3** **Reporting Relationships**.

a) In matters relating to Physician's employment, Physician shall be accountable to and report to the local physician executive of FPN for the geographic area within which the Practice Site is located ("FPN Physician Executive").

ATIQ REHMAN, M.D.

**Exhibit A**

b) FPN has established a local leadership council ("Local Leadership Council") to advise and consult with the local FPN Physician Executive in the day to day operations of FPN. The Local Leadership Council also advises and consults with the FPN Leadership Council and the Corporate Vice President of FPN on matters of policy, procedures and initiatives. Physician is encouraged to work collaboratively with the Local Leadership Council and the local FPN Physician Executive and to offer input on matters of concern to the physicians employed by FPN. If Physician has any grievances or suggestions with respect to FPN policies or procedures, Physician should bring such matters to the attention of his or her local FPN Physician Executive and Local Leadership Council

**1.3** **Policies**. Physician agrees to comply with all policies of FPN, as published and amended from time to time, including but not limited to policies of Franciscan Alliance which are binding on FPN.

**1.4** **Charity Care**. Physician acknowledges that FPN is established in furtherance of the charitable mission of Franciscan Alliance and is committed to providing health care services regardless of a patient's ability to pay. Physician further acknowledges that the provision of such charity care for emergency or medically necessary health care services falls within the scope of Physician's employment. Accordingly, FPN may call upon Physician to provide charity care for emergency or medically necessary health care services to various patients at no charge consistent with the Charity Care Policy of Franciscan Alliance, as published and amended from time to time. The Physician will be compensated for the provision of charity care for emergency or medically necessary health care services within the scope of the Franciscan Alliance Charity Care Policy on the same basis as Physician is compensated for other Services pursuant to Exhibit B attached hereto.

If Physician desires to provide charity care during paid time off or other leave of employment from FPN or otherwise provide charity care outside of the Franciscan Alliance Charity Care Policy, then Physician must obtain the prior written consent of FPN, in order to permit FPN to determine if both the Physician and FPN are appropriately covered by professional liability insurance with respect to Physician's provision of such charity care.

**1.5** **Conflict of Interest; Moonlighting**.

**1.5.1** **Conflict of Interest**. Physician agrees to comply with the Franciscan Alliance Conflict of Interest Policy applicable to its employed physicians, as published and amended from time to time. Physician shall not accept employment or contractual obligations with any other entity, organization or individual or otherwise engage in the private practice of medicine, except as may be otherwise expressly permitted to the contrary herein, or, in each other instance, without prior written approval of FPN. Physician shall not invest directly or indirectly in entities involved in the provision of medical and healthcare services, other than publicly traded companies, without prior written approval of FPN. Failure to acquire prior written approval will constitute a material breach of this Agreement. Further, Physician agrees to execute necessary documents or certifications of disclosure pursuant to the Conflict of Interest Policy.

3

**Exhibit A**

**1.5.2** <u>Moonlighting</u>. Physician shall not provide professional or administrative services other than on behalf of FPN, except as may be expressly provided to the contrary herein or with prior written consent of FPN. Requests for permission to engage in the provision of services outside of Physician's employment hereunder should be addressed to the FPN Physician Executive. The provision of services outside of Physician's employment hereunder will not be covered under the professional liability insurance policy maintained by FPN for the Physician.

**1.6** <u>Ethical and Religious Directives</u>. Physician agrees to abide by and comply with The Ethical and Religious Directives for Catholic Health Care Services, as promulgated by the United States Conference of Catholic Bishops and interpreted by the local bishop from time to time, (the "<u>Directives</u>") while acting within the scope of his or her employment by FPN. Physician acknowledges that he or she has been provided a copy of the Directives by FPN and has read them. A copy of The Ethical and Religious Directives for Catholic Health Care Services, 6th Edition, as of the date of this Agreement may be found at the following link: http://www.usccb.org/about/doctrine/ethical-and-religious-directives/upload/ethical-religious-directives-catholic-health-service-sixth-edition-2016-06.pdf

**1.6.1** <u>Private Practice Exception</u>. If Physician spends any portion of his or her professional time engaged in or counseling activities which are prohibited by the Directives, he or she must do so in a limited private-practice capacity outside the scope of his or her employment hereunder, and the provisions of <u>Exhibit C</u>, attached to this Agreement and incorporated herein, shall apply.

**1.6.2** <u>No Abortions</u>. Physician may not perform abortions or prescribe abortifacient medications or devices or provide counseling or referral for abortion, even in a private practice capacity.

**1.7** <u>Patients; Nondiscrimination</u>. In connection with the Services under this Agreement, Physician:

**1.7.1** Will participate in, and abide by all applicable requirements and guidelines of, third-party payor agreements and health plans designated by FPN, including without limitation, the Medicare and Medicaid programs, and will not contract or participate with any other third-party payor or health plan or other contracting organization without the prior written consent of FPN; and

**1.7.2** Will provide prompt medical Services to patients without regard to of sex, race, color, religion, disability, source of payment, or national origin. Such treatment shall be consistent with the facilities, personnel, and equipment available and in conformity with the prevailing professional standard of care in the community.

**1.8** <u>Notice of Adverse Event</u>. During the term of this Agreement, Physician shall notify FPN immediately, or as soon as possible thereafter, in the event that:

**1.8.1** Physician's license to practice medicine in any jurisdiction is suspended, revoked, or otherwise restricted;

4

ATIQ REHMAN, M.D.

**Exhibit A**

**1.8.2** A complaint or report concerning Physician's competence or conduct is made to any state medical or professional licensing agency, including without limitation, the Medical Licensing Board of Indiana;

**1.8.3** Physician's privileges at any hospital, health care facility, or under any health care plan are denied, suspended, restricted, or terminated or under investigation for medical disciplinary cause or reason;

**1.8.4** Physician's controlled substance registration certificate (issued by the Drug Enforcement Administration) is being, or has been, suspended, revoked, or not renewed;

**1.8.5** Physician's participation as a Medicare or Medicaid provider is under investigation or has been terminated, or if Physician is currently, or has been, excluded from any Federal health care program;

**1.8.6** There is a material change in any of the information Physician has provided to FPN concerning Physician's professional qualifications or credentials;

**1.8.7** Physician's conviction of a felony or crime involving moral turpitude; and/or

**1.8.8** Physician is subject to or a participant in any form of activity which could reasonably be characterized as discrimination or harassment in the workplace.

**1.9** **Limited Waiver of Peer Review Confidentiality.** It is the intent of the Hospital and FPN to exchange confidential peer review information pertinent to Physician. The Hospital and FPN may elect to exchange such information by way of their relevant peer review committees. The purpose of this exchange is to foster more effective peer review and ultimately improve the quality of care provided by Hospital and FPN. In addition to those statutory mechanisms that generally allow one peer review committee to disclose confidential peer review information to another, Physician hereby waives his or her right of peer review confidentiality to the extent necessary to allow for the aforementioned exchange of information between the peer reviews committees of Hospital and FPN. Physician agrees that his or her signed acceptance of this Agreement shall operate as a written acknowledgement of this waiver, and Physician agrees that this written acknowledgement may be forwarded to the pertinent peer review committees of the Hospital and FPN. Physician further agrees that his or her written waiver of confidentiality shall extend to any and all communications to, the records of, and determinations of, the respective peer review committees of Hospital and FPN. In the event additional documentation becomes necessary to effectuate the exchange of confidential peer review information between the peer review committees of the Hospital and FPN, Physician agrees to promptly execute that documentation without objection.

**2.** **Obligations of FPN.**

**2.1** **Practice Site.**

5

ATIQ REHMAN, M.D.

**Exhibit A**

**2.1.1** <u>Location</u>. Initially, Physician shall render Services at the practice site known as Franciscan Health Crown Point located at 1201 N. Main Street, Crown Point, Indiana (the "<u>Practice Site</u>"). If FPN reasonably determines it to be necessary or appropriate, FPN retains the right to relocate the Physician or the Practice Site to another practice site within the Physician's "Primary Service Area" without the Physician's consent or may request Physician to provide Services at additional practice sites; provided that FPN agrees to consult in advance with Physician regarding such relocation and to give substantial consideration to Physician's recommendation. The term "<u>Primary Service Area</u>" means the geographic area comprised of the five (5) mile radius around each Practice Site location. FPN may not relocate the Physician or the Practice Site to another practice site outside of the Physician's Primary Service Area without the Physician's prior written consent.

**2.1.2** <u>Management and Support</u>. FPN shall provide and maintain the Practice Site, including practice management, staff, equipment, and supplies. After consultation with the Practice Site physicians, FPN shall staff the Practice Site as FPN deems necessary with appropriate personnel. FPN shall recruit and retain all personnel of the Practice Site. The final determinations regarding Practice Site staffing shall remain with FPN pursuant to the policies of FPN with substantial consideration given to recommendations of the Practice Site physicians.

**2.1.3** <u>Costs and Expenses</u>. FPN shall pay rent and all approved budgeted expenses and costs associated with the operation of the Practice Site. FPN shall establish a budget for Physician's practice at the Practice Site in consultation with Physician. Unless first approved by FPN, Practice Site expenses due to Physician requests or activities in excess of the practice budget may be deducted from Physician's compensation.

**2.2** <u>Professional Liability Insurance</u>.

**2.2.1** As of the commencement date of the Term and at all times throughout the Term of Physician's employment hereunder, FPN will maintain professional liability insurance for the Physician and shall pay the applicable surcharge to the Indiana Patients Compensation Fund for the Physician such that he or she will at all times be a "qualified provider" under the Indiana Medical Malpractice Act, Indiana Code §§ 34-18-1 *et seq.*, as amended from time to time. FPN may change the insurance carrier and other terms of the professional liability insurance, but at all times shall insure that FPN and Physician are each a provider under the Indiana Medical Malpractice Act.

**2.2.2** Physician shall only be covered by FPN's professional liability coverage while Physician is acting within the scope and course of employment with FPN. Physician agrees to participate in scheduled risk reduction educational seminars as a condition of coverage.

**2.2.3** Physician has the affirmative duty to provide his or her Services so as to be insurable at reasonable cost under FPN's professional liability policy without excessive premium charges. If Physician no longer is eligible for professional liability

6

ATIQ REHMAN, M.D.

**Exhibit A**

insurance through FPN's professional liability insurance carrier, then FPN may terminate this Agreement for Cause, as provided in Section 5.3.

**2.2.4** Upon the expiration or termination of employment with FPN for any reason, unless the professional liability insurance maintained by FPN pursuant to Section 2.2.1 above is maintained on an occurrence basis, FPN shall purchase an extended reporting endorsement ("tail coverage") covering the Physician for all professional medical liability claims arising from the practice of medicine, which arise from occurrences within the scope of Physician's employment by FPN or its affiliates.

## 3    Compensation, Assignment and Billing.

**3.1**   **Compensation**. In consideration for Physician's Services, FPN shall compensate Physician as described in Exhibit B. The compensation components and/or methodology now or hereafter described in Exhibit B, including but not limited to wRVU production based compensation, conversion factors, incentives and stipends may be amended, repealed or replaced in whole or in part at any time and from time to time by FPN after the initial 42 months of employment with FPN, provided that such changes to the compensation components and/or methodology will not be made more frequently than once per year unless there is good reason and will be of general applicability to similarly situated physicians employed by FPN who practice the same specialty in the same service area as Physician (if there are any such similarly situated physicians).

**3.2**   **Benefits**. During the Term of this Agreement, Physician shall be entitled to all such employment benefits as may, from time to time, be made generally available to physician employees of FPN. Franciscan Alliance shall have the right to determine and change the types, availability and employee costs of benefits made available to employed physicians, including Physician, at any time and from time to time, including health, dental, vision, disability, life insurance, retirement and other benefits. In addition, prorated, based on Physician's commencement date, Physician shall be provided 216 hours of allowed time off ("ATO") (including 6 holidays), and an additional 40 hours for continuing medical education annually, per FPN policy which is subject to change from time to time. A summary of the benefits available to Physician as of the commencement date of his employment has been provided to the Physician.

**3.3**   **Service Revenues Assignment; Other Non-Patient Revenues**. All revenues generated directly or indirectly by Physician acting within the scope of his employment shall be the exclusive property of FPN, and Physician assigns to FPN such revenues and the right to bill for and collect any charges made for his or her Services rendered to patients.

**3.4**   **Fee Schedule; Billing and Collection**. FPN shall establish professional fees for Physician and shall periodically review and evaluate the appropriateness of those fees. FPN agrees that all fee schedules shall be based on community and industry standards. FPN shall bill and collect any fees or charges for Services rendered by Physician. Physician shall prepare specific, accurate and timely medical records in accordance with Franciscan Alliance policies and the requirements of Medicare and other third party payors to enable FPN to timely bill, and receive payment for, Physician's Services. In the event that Medicare or any other third party

7

ATIQ REHMAN, M.D.            **Exhibit A**

payor refuses to pay FPN for any of Physician's Services because Physician has not timely and accurately prepared and submitted the medical records for such Services, then FPN will charge back against the Physician the Physician's wRVUs and compensation associated with such Services. If Physician's compensation is not based in whole or in part on wRVUs, then an amount equal to the compensation paid to the Physician for such Services, as determined by FPN in its reasonable judgment, will be charged back against the Physician. Notwithstanding the foregoing, FPN will not charge back the compensation against the Physician (i) to the extent Physician has a guaranteed minimum salary and the charge back would reduce Physician's salary below the minimum guaranteed amount, or (ii) if the Physician is on a fixed salary of a stated dollar amount. Physician shall also cooperate with and assist FPN in the collection of such fees and charges. If any fees are received by Physician, such amounts shall be assigned and turned over to FPN. Physician agrees that his or her sole compensation for the Services provided under this Agreement shall be the compensation paid by FPN as provided in <u>Exhibit B</u>.

      **3.5**    <u>**Physician Coding Inaccuracies**</u>. If any charges directly related to Physician's coding omissions or inaccuracies (as determined by reference to the National Correct Coding Initiative Coding Policy Manual for Medicare Services (Coding Policy Manual)) result in FPN reversing or refunding the charges to the payor, then FPN will charge back against the Physician the Physician's wRVUs and compensation associated with the reversed or refunded charges. If Physician's compensation is not based in whole or in part on wRVUs, then an amount equal to the compensation paid to the Physician for Physician's work associated with generating the reversed or refunded charges, as determined by FPN in its reasonable judgment, will be charged back against the Physician. Notwithstanding the foregoing, FPN will not charge back the compensation against the Physician (i) to the extent Physician has a guaranteed minimum salary and the charge back would reduce Physician's salary below the minimum guaranteed amount, or (ii) if the Physician is on a fixed salary of a stated dollar amount. FPN covenants that neither it nor anyone performing coding services on its behalf shall change the Physician's coding for professional physician services without prior notification to the Physician, except when the CPT code is defined under National Correct Coding Initiative Coding Policy Manual for Medicare Services (Coding Policy Manual), Contracted Published Payer Payment Policies and/or CPT Guidelines as not payable, billable, and/or bundled. If Physician is notified of a change of the Physician's coding and the Physician disagrees, Physician may provide notice to FPN within ten (10) days following his receipt of notification of the coding change and request that such disagreement be submitted to either Blue & Company or 3M Health Information Systems for review and final determination of the correct coding, and the fees and expenses of such outside coding review and determination shall be borne one-half by FPN and one-half by Physician. This Section 3.5 shall survive termination of this Agreement regardless of the reasons therefore.

    **4.**    <u>**Commencement and Term**</u>. The term of Physician's employment shall commence on January 6, 2019 and shall continue for a period of forty-two (42) months, ending July 5, 2022 ("<u>Initial Term</u>"). Thereafter, Physician's employment shall renew automatically for additional one (1) year terms on the terms and conditions in this Agreement as then in effect unless either party gives notice of nonrenewal to the other party not less than one hundred eighty (180) days' prior to the expiration of the Initial Term or any subsequent term (the Initial Term and each

ATIQ REHMAN, M.D.

**Exhibit A**

subsequent renewal term being herein collectively referred to as the "Term"). Such termination by nonrenewal of the Term shall be deemed and treated as termination without cause pursuant to Section 5.1. Upon expiration or termination of this Agreement, neither party shall have any further obligations except for obligations accruing prior to the date of expiration or termination and obligations which are expressly made to extend beyond the termination of this Agreement.

**5.** **Termination**. Physician's employment shall terminate upon any of the following events:

    **5.1** **Termination Without Cause.** Either party may terminate this Agreement without cause upon not less than one hundred eighty (180) days' prior written notice to the other party ("Notice Period"). However, if Physician limits his or her patient appointment schedule during or before such Notice Period, then FPN may terminate this Agreement immediately or reduce Physician's compensation to a level consistent with his or her production. In the alternative and at its discretion, FPN may elect to relieve Physician of his or her employment duties as of a certain date and compensate Physician at his or her current rate of pay, including applicable benefits, for the remainder of the Notice Period. Notwithstanding the terms of this Section 5.1, neither party shall have a right to terminate this Agreement without cause during the Initial Term.

    **5.2** **Termination For Cause.** Either party may terminate this Agreement for cause in the event the other party fails to perform its covenants and obligations pursuant to this Agreement (a "Violation") by giving thirty (30) days' prior written notice of termination specifying the Violation to the other party and such Violation is not corrected within the 30-day notice period ("Cure Period"). Notwithstanding the forgoing, if within six (6) months following the Cure Period a subsequent Violation is committed by the same party that is the same or similar to that party's prior Violation, then the non-breaching party may terminate this Agreement with thirty (30) days' prior written notice but without having to provide any further Cure Period.

    **5.3** **Immediate Termination For Cause.** FPN may immediately terminate this Agreement, without a Cure Period, at its sole option, upon providing written notice to Physician, in the event: (1) his or her license to practice medicine in Indiana or any other state is suspended, revoked or limited; (2) his or her clinical privileges or Medical Staff membership at the Hospital or any other hospital is suspended, revoked or limited; (3) his or her federal DEA permit or state CSR is suspended, revoked or limited; (4) Physician is suspended or excluded from participation in any government health care plan; (5) Physician fails to satisfy the board certification requirements outlined in Exhibit A; (6) Physician is charged with a criminal offense other than a minor traffic offense; (7) Physician engages in conduct that is disruptive, unprofessional, unethical, fraudulent, inconsistent with FPN's and/or Hospital's core values, or constitutes a threat to the health, safety or welfare of any person; (8) Physician fails to positively respond to or comply with, as solely determined by FPN, a performance improvement plan established by FPN and communicated to the Physician to improve his or her performance; (9) Physician no longer is eligible for professional liability insurance through FPN's professional liability insurance carrier; or (10) while acting within the scope of his or her employment with FPN, Physician fails to adhere to *The Ethical and Religious Directives for Catholic Health Care Services*. In lieu of or in addition to such termination, FPN at its sole

9

ATIQ REHMAN, M.D.

**Exhibit A**

discretion may take corrective action (e.g., suspension) against Physician as it deems appropriate.

**5.4** **Death**. This Agreement shall automatically and immediately terminate without notice upon the death of Physician.

**5.5** **Disability.** FPN may terminate this Agreement in the event of a Permanent Disability of the Physician. "Permanent Disability" shall have the meaning ascribed to such term by any FPN permanent disability insurance policy in effect at the time applicable to Physician or, if none, his or her inability to perform substantially all his or her duties and responsibilities hereunder, by reason of a physical or mental disability or infirmity, for either: (i) a continuous period of six (6) months, or (ii) one hundred eighty (180) days during any twelve (12) month period. The date of such Permanent Disability shall be (A), in the case of clause (i) of the immediately preceding sentence, the later of the last day of such six (6) month period or the day on which Physician submits satisfactory medical evidence of such Permanent Disability or (B) in the case of clause (ii) of the immediately preceding sentence, such date as is determined in good faith by FPN.

**5.6** **Termination by Agreement.** This Agreement may be terminated at any time upon the terms set forth in a written document signed by both parties.

**5.7** **Termination as a Consequence of Law**. This Agreement may be terminated as provided in Section 8, Compliance with Laws and Regulations.

**5.8** **Return of FPN Property**. Upon the termination of his or her employment for any reason, Physician agrees to promptly return to FPN, without retaining a copy thereof, all property which belongs to FPN, including equipment, medical and office supplies, parking cards, keys, prescription pads, documents, records, reports, computers, computer discs, files, samples, books, correspondence, lists, including, but not limited to price and patient lists, or other written or graphic records, including originals and all copies, which are or have been in his or her possession or control.

**5.9** **Termination of Hospital Privileges**. Termination of employment for any reason will result in a voluntary term of hospital privileges by physician unless otherwise mutually agreed.

**6.** **Restrictive Covenants**.

**6.1** **Non-Compete Covenant**. Except as provided in Sections 1.6.1 above and 6.2 below, during the term of Physician's employment with FPN and for a period of two (2) years thereafter ("Restriction Period"), Physician shall not, directly or indirectly, (i) own, make an investment in, operate, or manage an entity that provides professional medical services and administrative services incident thereto, or (ii) provide, be employed by or contracted with any entity to provide, or in any other manner participate in the provision of, professional medical services and administrative services incident thereto (including but not limited to medical director services), in each case within the Geographic Area (as defined below). The Restriction Period shall be extended by the length of any violation of this Section 6.1. As used herein the

ATIQ REHMAN, M.D. **Exhibit A**

term "Geographic Area" means the area encompassing a fifteen(15) mile radius around each of the Practice Site locations. These restrictions are referred to as the "Non-Compete Covenant." This Non-Compete Covenant does not modify or supersede any other non-competition covenant by the Physician contained in any practice purchase agreement or similar arrangement with FPN, Franciscan Alliance or its affiliates.

**6.2** **Exceptions to Non-Compete Covenant**. Notwithstanding Section 6.1, the Non-Compete Covenant shall not be applicable to Physician under any of the following circumstances:

a) FPN voluntarily ceases to offer professional medical services in the Physician's specialty, as a consequence of which FPN terminates Physician without cause pursuant to Section 5.1.

b) The term of this Agreement is terminated by either party without cause or expires without renewal and Physician engages in Private Independent Practice. "Private Independent Practice" means the private, independent practice of medicine as a solo practitioner or in a group practice setting consisting of not more than five (5) physicians, if neither Physician nor any practitioner who is a member, employee or independent contractor of such group is employed by, under contract with or otherwise aligned or participates (including participation through an accountable care organization, medical home or other arrangement) with a hospital, health system or provider or payor network (other than Hospital and its affiliates).

The availability of an exception under this Section 6.2 to the Non-Compete Covenant shall not affect or supersede any other non-competition covenant by the Physician contained in any practice purchase agreement or similar arrangement with FPN, Franciscan Alliance or its affiliates.

**6.3** **Non-Solicitation Covenant**. During the Restriction Period, Physician shall not, directly or indirectly, solicit any patient or customer who is receiving services from the Physician or FPN or who has received services from Physician or FPN during the Term of this Agreement. Also, during the Restriction Period, Physician shall not, directly or indirectly, solicit or hire any FPN employee. The Restriction Period shall be extended by the length of any violation of this Section 6.3. These restrictions on soliciting patients and soliciting or hiring FPN employees are referred to as the "Non-Solicitation Covenants."

**6.4** **General**.

**6.4.1** It is agreed by the parties that the above described Non-Compete Covenant and the Non-Solicitation Covenants (collectively "Covenants") are reasonable in all respects, specifically including the time, services, and geographic location restrictions, and are intended to protect the legitimate business interest and goodwill of FPN and/or Hospital. Further, each of the Covenants shall be construed independent of any other provision of this Agreement and shall survive the termination of this Agreement. If the Covenants (or any element thereof) shall be determined to be

11

**Exhibit A**

overbroad as to geographical area, activity, or time covered, then the said geographical area, activity, or time covered may be either stricken or reduced by a court of competent jurisdiction to the extent such court deems reasonable, and this Section may then be enforced as to such remaining portions and such reduced geographic area, activity, or time.

      **6.4.2**  Physician acknowledges that FPN will be subject to irreparable injury for breach of the Covenants by Physician, and that FPN, in addition to all other rights which may be available, shall have the right of specific performance or injunction in the event of breach or of injunction in the event of any threatened breach, plus costs of such action(s), interest on damages, attorneys' fees, and an amount, if any, otherwise owed to Physician under this Agreement. If FPN seeks to enforce one or all of these Covenants through preliminary injunctive relief or temporary restraining order, Physician waives any requirement that FPN post any bond or security. The period of the Covenants described herein shall be extended by any time during which Physician is in breach of these Covenants. The existence of any claim or cause of action Physician may have against FPN, whether predicated on this Agreement or otherwise, shall not constitute a defense to the enforcement by FPN of the Covenants. In addition to any injunctive relief or specific performance, FPN may pursue such other remedies to which it may be entitled at law.

**7.**    **Confidentiality**. Physician acknowledges that any and all information related to FPN or the Hospital concerning either of their (i) treatment of patients by Physician or others, (ii) conduct of providing health care, (iii) policies, procedures, operating manuals, (iv) financial information, (v) business operations, and (vi) business plans and projections (collectively, "Confidential Information") is strictly confidential, constitutes the exclusive and proprietary property of FPN and shall not be disclosed by Physician to any third party. Physician agrees (i) to comply with state and federal laws regarding confidentiality of individually identifiable health information, including, but not limited to, HIPAA and (ii) to comply with all FPN policies and procedures pertaining to use and disclosure of individually identifiable health information or proprietary business information. Physician agrees that, during the term of this Agreement and after the termination of this Agreement, Physician shall not (other than for use in the course of providing treatment to a patient) use, take or retain outside of FPN or Hospital locations any individually identifiable health information or Confidential Information or copies of any of the same.

**8.**    **Compliance with Laws and Regulations.** The parties believe that this Agreement complies with all relevant federal and state laws and regulations. Should either party have a good faith belief that this arrangement creates a material risk of violating any such laws or regulations, as now in effect or as subsequently enacted or interpreted, the party shall give written notice to the other party, together with a legal opinion of a firm recognized as having expertise in health law matters setting forth the basis for such belief. Both parties shall then make a good faith effort to amend the Agreement to comply with such laws or regulations or other authority. In the event the parties cannot agree in good faith to a reformation of the arrangement, this Agreement shall terminate on the sixtieth (60th) day following the date of the initial written notice.

ATIQ REHMAN, M.D.                                       **Exhibit A**

9. **Miscellaneous Provisions**.

    9.1    **Assignment**. This Agreement is personal to each of the parties hereto and may not be assigned, by operation of law or otherwise, by any party hereto without first having obtained the written consent of the other party; provided, however, that FPN may assign this Agreement to Franciscan Alliance or any entity which controls, is controlled by or is under common control with Franciscan Alliance.

    9.2    **Notices**. All notices or other communications required or permitted pursuant to this Agreement shall be in writing and shall be considered as properly given or made (a) upon personal delivery, (b) after the expiration of three (3) days from the date upon which such notice was mailed from within the United States by first-class mail, postage prepaid, (c) upon confirmed delivery by prepaid courier delivery, or (d) upon electronic delivery, so long as the receiving party confirms receipt thereof.. All notices shall be so given or made to the parties at the following addresses (it being understood that the address of any party hereto may be changed by a notice in writing given in accordance with the provisions hereof):

        If to FPN:            Franciscan Physician Network
                           1515 Dragoon Trail
                           Mishawaka, IN 46544
                           Attn: Corporate Vice President

        If to Physician:     Atiq Rehman, M.D.
                           2103 Bishop View
                           Cherry Hill, NJ 08034

    9.3    **Severability**. If any provision of this Agreement is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable, such provision shall be modified for compliance with such order or, if necessary, severed, and the invalidity, illegality, or unenforceability thereof shall not affect the validity, legality, or enforceability of the remaining portion of the provision and/or the remaining provisions of this Agreement, which shall be fully valid notwithstanding the modified or severed provision or portion thereof.

    9.4    **Successors**. This Agreement and all the terms and provisions hereof shall be binding upon and shall inure to the benefit of the parties hereto, and their legal representatives, heirs, successors, and assigns, except as otherwise expressly provided. Nothing in this Agreement will create or be deemed to create any third-party beneficiary rights in any person or entity not a party to this Agreement.

    9.5    **Governing Law; Venue**. This Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Indiana, without giving effect to its provisions regarding conflicts of laws. Courts of competent authority located in Lake County, Indiana shall have sole and exclusive jurisdiction of any action arising out of or in connection with this Agreement, and such courts shall be the sole and exclusive venue for any such action.

    9.6    **Counterparts**. This Agreement may be executed in counterparts, each of which

ATIQ REHMAN, M.D.                        **Exhibit A**

shall be an original, but all of which shall constitute one and the same instrument.

**9.7     Pronouns and Headings; Sections and Exhibits**.  As used herein, all pronouns shall include the masculine, feminine, neuter, singular, and plural thereof wherever the context and facts require such construction.  The headings, titles, and subtitles herein are inserted for convenience of reference only and are not to be considered in any construction of the provisions hereof.  The exhibits attached hereto are incorporated into and made a part of this Agreement.

**9.8     Modification/Waiver**.  No waiver, modification, or termination of any term or provision of this Agreement or any valid addendum, exhibit, schedule, or amendment hereto, shall be effective unless in writing and signed by all parties, except as otherwise set forth herein. Neither party's failure, delay, or forbearance to insist on strict performance of any term or provision of this Agreement or any valid addendum, exhibit, schedule, or amendment hereto, in one or more instances, shall be construed as a waiver of later strict performance of that term or provision, nor shall either party's failure to exercise any right or remedy available to it be construed as a waiver of such right or remedy.

**9.9     Attorneys' Fees**.  In the event litigation is instituted between FPN and Physician with respect to all or any part of this Agreement, the prevailing party therein shall be entitled to recover, in addition to all other relief obtained, its costs, expenses, and fees, including reasonable attorneys' fees and expenses, incurred in such litigation.

**9.10     Entire Agreement**.  This Agreement and all exhibits hereto constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede all prior written and oral agreements and all contemporaneous oral agreements between the parties with respect to the subject matter hereof.

*Remainder of this page has been intentionally left blank.*

ATIQ REHMAN, M.D.                                                    **Exhibit A**

IN WITNESS WHEREOF, this Agreement has been executed as of the date and year first above written. This Agreement may be executed in multiple counterparts and delivered by facsimile or other electronic or digital transmission, and a printout of the computerized version shall be considered an original.

**FPN:**

**FRANCISCAN PHYSICIAN NETWORK,**
a division of Franciscan Alliance, Inc.

By: _Claude Foreit (Sep 27, 2018)_____
       Claude A. Foreit, D.O., M.H.A.
       Corporate Vice President

**PHYSICIAN:**

By: _Atiq Rehman (Sep 26, 2018)_____
       Atiq Rehman, MD

**Physician hereby affirms that he or she has read and will uphold *The Ethical and Religious Directives for Catholic Health Care Services*, 6th Edition.** Physician acknowledges any salary paid by FPN will not cover work associated with the activities by Physician in his or her limited private-practice capacity, if any, which are proscribed by *The Ethical and Religious Directives for Catholic Health Care Services*. Physician further acknowledges FPN will not provide liability insurance for, and will not process bills or collect revenue for, such proscribed private practice activities, and Physician will need to supply his or her own supplemental liability insurance for such activities.

                                 _AR_
                                 AR
                        Physician's Initials

ATIQ REHMAN, M.D.                                       **Exhibit A**

**EXHIBIT A**

**JOB DESCRIPTION: QUALIFICATIONS / SERVICES**

1.  <u>Qualifications</u>. Physician shall: (a) obtain and hold a valid and unlimited license to practice medicine in the State of Indiana; (b) be accepted as and remain an active member in good standing of Hospital's Medical Staff with appropriate privileges granted thereby; (c) obtain and hold a valid and unrestricted federal DEA permit and state CSR number; (d) be able to be insured by FPN at a rate commensurate with other physicians in Physician's specialty; and (e) participate in and cooperate with the compliance programs and initiatives of FPN and Franciscan Alliance. Physician represents and warrants that he/she has never been excluded, suspended, or otherwise sanctioned by Medicare, Medicaid, or any other third-party plan or payor. Physician shall notify FPN immediately upon any changes in the above qualifications. Physician will be Board eligible or Board certified upon hire.

2.  <u>Board Certification</u>. Physician certifies that he or she is and shall remain board certified in the specialty of Cardio Thoracic Surgery and shall take reasonably necessary steps to maintain such board certification(s) unless otherwise mutually agreed by Physician and FPN. Physician will have three years to attain Board certification.

3.  <u>CME</u>. Physician shall attend appropriate seminars and continuing education programs or complete other appropriate CME activities, as needed and within the parameters of FPN's CME policy as in effect from time to time, to maintain licensure/board certification and remain up-to-date in Physician's area(s) of medicine and/or surgery. Physician agrees that scheduling of time away shall be coordinated in advance with Physician's practice manager and practice partners/call group and shall be taken only when Physician's practice location and call responsibilities are covered by appropriate provider(s).

4.  <u>Professional Medical Services</u>.

    Physician shall provide the following professional services subject to FPN policy as may, from time to time, be approved for physician employees of FPN:

    a.  Render designated on-site and off-site professional and competent health care services and medical care to patients of FPN including telephone consultation for patients within the Franciscan Alliance Northern Indiana Division, which will require obtaining staff privileges at Franciscan Health Michigan City, Franciscan Health Dyer, Franciscan Health Hammond and Franciscan Health Munster

    b.  Provide direct patient care on a full-time basis to meet the needs of patients, typically for a minimum thirty-six (36) hours per week, performing direct professional clinical services, plus additional reasonable time needed for performing administrative services and call coverage, as scheduled by FPN and Physician and subject to time away for Allowed Time Off and Continuing Medical Education in accordance with FPN policies. In addition, Physician shall

ATIQ REHMAN, M.D.                                              **Exhibit A**

receive two (2) weekends off per month (Friday at 5:00 pm to Monday at 7:00 am). Notwithstanding the foregoing, any hours Physician is required to be physically present at the Hospital providing call coverage will be included in determining if Physician has met his or her obligations to provide professional services hereunder on a full-time basis. FPN reserves the right to adjust the benefits and compensation provided herein in the event Physician's rendition of Services fails to meet the standards for "full-time."

c. Prepare specific, accurate and timely medical records, using FPN's EMR technology. Such medical records shall be owned and maintained by FPN;

d. Supervise and provide medical direction to persons who assist Physician in rendering professional services at FPN;

e. Assist in educating and training employees and office staff recruited to support Physician in the delivery of services;

f. Participate in FPN and Franciscan Alliance quality and utilization review mechanisms designed to improve the quality and efficiency of the physician services, including, but not limited to, mechanisms to address utilization review procedures requested by any current or future managed care payers or other external parties;

g. Cooperate in FPN and Franciscan Alliance efforts to reduce variation from best practices and to enhance service, patient satisfaction, efficiency of care and efficiency of resource consumption;

h. Meet performance and quality criteria and cooperate with the Centers for Medicare and Medicaid Services ("CMS") initiatives as designated by FPN and Franciscan Alliance from time to time which may include, without limitation, one or more of the following: claims based measures, a Consumer Assessment of Health Providers and Systems ("CAHPS") survey, data from Electronic Health Record Incentive Programs, electronic prescribing incentive programs, the Centers for Disease Control and Prevention National Healthcare Safety Network, Hospital Compare, and those reported by each Medicare ACO through the Group Practice Reporting Option ("GPRO"), and any other performance measures adopted by CMS from time to time. All such initiatives shall be developed, adopted and implemented in accordance with FPN and Franciscan Alliance policies;

i. Cooperate in measurement and evaluation of current practices and performance, design and implementation of practice improvement efforts and measurement and evaluation of improved practice performance;

j. Adhere to and follow patient care protocols established by FPN and Franciscan Alliance;

17

ATIQ REHMAN, M.D.                                                    **Exhibit A**

k.  Provide such other services that are reasonably requested by FPN and agreed to by the Physician;

l.  Refer patients requiring medically necessary services to FPN physicians, FPN facilities and/or the Hospital, as appropriate, if such services are available within FPN or at the Hospital, unless (i) a patient expresses a different choice, (ii) the patient's insurer requires a different provider, or (iii) the best medical interest of the patient demands a different referral in Physician's judgment; and

m.  To insure appropriate coverage of the Practice Site(s) and the Hospital's Emergency Room, Physician shall participate in the Practice Site and Hospital Emergency Room call rotation pursuant to FPN's standard policies and/or practices.

5.  <u>Administrative Services</u>.  Physician, while performing the following administrative services. shall have the position of director of cardiac, vascular and thoracic surgical services for Northern Indiana Division, reporting to a corporate officer.

a.  Assist FPN in ensuring that the provision of medical services complies with all applicable policies and requirements of licensing, regulatory and accrediting bodies;

b.  Assist FPN as requested with third-party credentialing, billing and collection matters in a specific, timely and accurate manner, including Medicare and Medicaid, and private third-party payors;

c.  Coordinate medical care and maintain effective professional relationships with FPN physicians, as well as those on Hospital's Medical Staff;

d.  Participate in regular Medical Staff activities of the Hospital as required to maintain active medical staff membership and as defined by FPN;

e.  Assist FPN as requested in providing medical services in a fiscally efficient and effective manner;

f.  Make appropriate arrangements for coverage during scheduled absences;

g.  Perform other administrative duties and responsibilities as may be reasonably requested by FPN; and

h.  Participate in regular FPN activities, such as Committees, All Physician Meetings, Task Forces, etc., which promote excellence in FPN performance and communication as defined by FPN.

18

ATIQ REHMAN, M.D.                                                    **Exhibit A**

6.     <u>Applicable Standards</u>. Physician shall perform all services hereunder in a cooperative, collegial and non-disruptive manner and in compliance with all relevant federal and state laws, regulations, and standards governing the practice of medicine. Physician shall perform all duties hereunder in conformance with all requirements of FPN and the Hospital's policies and procedures (including but not limited to privacy policies), Hospital's Medical Staff Bylaws and Rules and Regulations, and Hospital's and FPN's Corporate Compliance Program.

ATIQ REHMAN, M.D.                                     **Exhibit A**

**EXHIBIT B**

**PHYSICIAN COMPENSATION**

I. **BASE COMPENSATION**

    a) Physician's guaranteed base compensation during the Initial Term ("Guarantee Period") shall be One Million Ninety Eight Thousand and 00/100 Dollars ($1,098,000.00) annually ("Guaranteed Compensation"). Following the Guarantee Period, FPN shall compensate Physician in accordance with the Compensation Methodology. In the event the contract is not renewed beyond the 42nd month, then annual compensation for the months 37 through 42 shall be prorated and paid on a monthly basis.

    b) Physician's wRVU production will be evaluated on an annual basis. Physician may be eligible for additional compensation according to the terms and conditions of the Incentive Compensation Program set out below.

II. **COMMENCEMENT BONUS.** FPN shall issue a bonus to Physician in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) ("Commencement Bonus") less appropriate withholdings and other authorized deductions, paid at such times and per methods as other salaried employees of FPN in a manner consistent with FPN and Franciscan Alliance, Inc. corporate policy, but within thirty (30) days following the commencement date of Physician's employment with FPN. The parties agree and understand that this compensation and any compensation received under this agreement are fair market value for the services provided pursuant to the employment relationship. Physician understands that for tax purposes the Commencement Bonus shall be treated as income and shall be subject to the same tax treatment as compensation described in the agreement and Exhibit B.

    If this Agreement is terminated for any reason by either party, excluding termination due to death or disability of Physician, prior to Physician completing: (i) twelve (12) months of employment with FPN, then Physician shall repay to FPN the entire gross amount of the Commencement Bonus; or, (ii) twenty-four (24) months of employment with FPN but after completing twelve (12) months of employment, then Physician shall repay to FPN 50% of the gross amount of the Commencement Bonus; or, (iii) forty-two (42) months of employment with FPN but after completing twenty-four (24) months of employment, then Physician shall repay to FPN 25% of the gross amount of the Commencement Bonus. Any repayments owed to FPN by Physician shall become due and payable immediately. If Physician completes thirty-six (36) months of employment with FPN or more, then Physician shall have no obligation to repay any amount of the Commencement Bonus. In the event Physician shall fail to repay any amounts to FPN when due, and if FPN initiates collection efforts, Physician shall be responsible for any collection costs and expenses incurred by FPN, including but not limited to reasonable attorneys' fees. In the event Physician shall fail to repay any amounts to FPN when due, such amounts will bear interest at the prime lending rate then in effect plus 2% per annum from the date due until fully repaid; and if FPN initiates collection efforts, Physician shall be responsible for any

ATIQ REHMAN, M.D.

**Exhibit A**

collection costs and expenses incurred by FPN, including but not limited to reasonable attorneys' fees.

**III.    SPECIAL INCENTIVE BONUS.**    Upon achieving a three-star rating for Society of Thoracic Surgery for Adults, during the Initial Term of this Agreement, FPN shall issue a special incentive bonus to Physician in the amount of Fifty Thousand and 00/100 Dollars ($50,000.00) ("Special Incentive Bonus") less appropriate withholdings and other authorized deductions.

**IV.    ADDITIONAL COMPENSATION.**    FPN agrees to reimburse Physician the cost of obtaining or maintaining an Indiana Medical License, DEA, and CSR for the provision of these services.

## V.    SHARED COMPENSATION PROGRAM

In addition to the annual Base Compensation, Physician shall have an opportunity to earn incentive compensation in accordance with FPN's Physician Incentive Program ("PIP"). The PIP will be based upon the extent to which Physicians in the Shared Compensation Pool would be duly qualified cardiac, vascular or thoracic surgeons who are employed by FPN in the Northern Indiana division. In addition Physician(s) meets or exceeds the agreed upon benchmarks for wRVU production, quality and safety, patient satisfaction and cost-effectiveness. In order to be eligible for incentive compensation, Physician's wRVU production must meet or exceed the wRVU target established for Physician's level of Base Compensation, regardless of whether Physician meets or exceed other benchmarks.

Under the Shared Compensation Program any wRVU's generated in excess of the wRVU's required to meet the aggregate base compensation shall result in a payment of $60.00 per wRVU into the Shared Compensation Pool. At the end of the calendar year if the aggregate target wRVU production for base compensation for the Group has been achieved then the excess dollars in the pool will be distributed equally to all members of the practice operating council. A proration will be done for any physician that is less than 1.0 FTE.

Physician's wRVU Conversion Factor (CF) set at $60.00 per wRVU and shall not be reduced during the Initial Term nor the first Renewal Term.

Incentive compensation will be calculated and paid on a calendar year basis, provided, that if this Agreement terminates on a date other than the end of a calendar year then, any funds held in the PIP to which Physician may be entitled shall be paid to Physician.

## VI.    Definitions.

a)    A Worked Relative Value Unit ("wRVU") is a value assigned to each CPT/HCPC code by CMS. The number of individual procedures completed for each code is multiplied by

ATIQ REHMAN, M.D.                                                    **Exhibit A**

the wRVU value for that code resulting in the total wRVUs for each CPT/HCPC code submitted. These values are totaled to arrive at the Physician's total wRVUs. The wRVU value of each CPT/HCPC code is subject to change annually and will be updated from time to time, at the sole discretion of FPN, but not more frequently than once per calendar year. Any change in wRVU values approved by FPN and Franciscan Alliance shall be effective on January 1st of each compensation year.

b) The wRVU benchmarks set forth in this Exhibit B shall be prorated to account for a commencement date other than January 1st and for Physician's time off pursuant to disability or approved unpaid leave.

c) All quarterly performance updates will be supplied to Physician via secure Franciscan Alliance email. Written copies will be provided only upon request.

d) Group. The Group shall be defined as all cardiac, thoracic and vascular surgeons employed by FPN Hammond, Dyer, Munster, Crown Point that are members of the POC.

ATIQ REHMAN, M.D.

**Exhibit A**

# EXHIBIT C

## CLINICAL PRACTICE ETHICAL GUIDELINES
## FOR PROVIDERS EMPLOYED BY
## FRANCISCAN ALLIANCE

*The Ethical and Religious Directives for Catholic Health Care Services*, as promulgated by the United States Conference of Catholic Bishops and interpreted by the local bishop from time to time, ("Directives") represent the model of Catholic healthcare to which Franciscan Alliance, Inc., its divisions, subsidiaries and controlled affiliates (collectively, "Franciscan Alliance") adhere. All services provided by Franciscan Alliance must comply with the Directives. The guidelines below are established for physicians, advanced practice nurses, midwives and physician assistants who are employed by Franciscan Alliance ("Providers").

1. Providers may not perform abortions or prescribe abortifacient medications or devices or provide counseling or referral for abortion, even in a private practice capacity and in premises not owned or leased by Franciscan Alliance or its affiliates.

2. Providers may not engage in, or provide counseling for, other procedures or activities which do not comply with the Directives ("Prohibited Activities"), except in a private practice capacity outside of employment by Franciscan Alliance and subject to the following limitations:

a) Any Providers who are employed by Franciscan Alliance and who do not have a limited private-practice provision in their contract may not engage in Prohibited Activities.

b) Any Providers who are employed by Franciscan Alliance but who have a limited private-practice provision in their contract and who engage in Prohibited Activities do so in a limited private-practice capacity contrary to any intention on the part of Franciscan Alliance.

c) Any Providers who are employed by Franciscan Alliance but who have a limited private-practice provision in their contract may not engage in Prohibited Activities in premises owned or leased by Franciscan Alliance, except for prescribing contraceptives taken orally for contraceptive purposes.

d) No prescription pad printed with the names of Franciscan Alliance or any of its facilities, divisions or subsidiaries, or any associated logos may be used for the prescription of a drug or medication used for a Prohibited Activity, including contraceptives taken orally for contraceptive purposes.

e) Any Provider salary paid by Franciscan Alliance does not cover work associated with Prohibited Activities by the Provider in his or her limited private-practice capacity.

f) Franciscan Alliance will not process bills or collect revenue for work exclusively identified with a Prohibited Activity by a Provider in his or her limited private-practice capacity.

g) Franciscan Alliance will not provide liability insurance for work associated with Prohibited Activities by the Provider in his or her limited private-practice capacity. The Provider will need to supply his or her own supplemental liability insurance for such work.

ATIQ REHMAN, M.D.                                     **Exhibit A**

h) All activities associated with prescribing contraceptives taken orally for contraceptive purposes on premises owned or leased by Franciscan Alliance can only be performed by the Provider, who must make it clear to patients and office staff that he or she is providing the Prohibited Activity in a limited private-practice capacity.

i) Any Provider offering obstetrical or gynecological services in premises owned or leased by Franciscan Alliance must provide natural family planning (NFP) literature and make appropriate referrals for NFP instructions.

j) If a Provider prescribes contraceptives taken orally for contraceptive purposes on premises owned or leased by Franciscan Alliance, then signage must be provided which explains that such prescriptions are provided by the Provider in his or her limited private-practice capacity.

24

ATIQ REHMAN, M.D.

**Exhibit A**